**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAYSHORE FORD TRUCK, et al, | Civil Action No.: 99-cv-00741 (JLL) |
| Plaintiffs, | |
| | **OPINION** |
| v. | |
| FORD MOTOR COMPANY, | |
| Defendant. | |

**LINARES**, District Judge.

This matter comes before the Court on certain motions *in limine* filed by Plaintiffs and Defendant. The Court will hear oral arguments at the beginning of trial on Defendant's Motion to Preclude the Expert Opinion Testimony of Les Langenderfer and Motion to Exclude Certain Evidence and Arguments; and Plaintiffs' Motion to Preclude Defendant's Use of Testimony of Adequacy of Fact Discovery only. Until then, the Court reserves judgment on the aforementioned motions. As to the remaining motions *in limine*, the Court has considered the submissions of the parties and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiffs' Motion to Preclude the Use of Class Damages, Motion to Bar the Expert Testimony of Ned S. Barnes, Motion to Exclude Evidence of Super Duty Sales, Motion to Preclude the Use of Evidence Related to Colony Ford Truck Sales, Inc. and Motion to Bar the Expert Testimony of Davis S. Kaplan are granted in part and denied in part. Defendant's Motion to Preclude the Expert Reports of Dr. Ernest Manuel is denied.

## I.     BACKGROUND

The facts of this case have been more fully set forth in this Court's prior summary judgment and class certification opinions.

On December 7, 2005, this Court granted the named Plaintiffs' motion for summary judgment with regard to liability for their breach of contract claim.  Subsequently, the case was certified as a class action on September 8, 2006.  On November 16, 2009, the Court extended its ruling on liability for breach of contract to the class of Ford heavy truck dealers who, upon Ford's sale of its heavy truck business to Freightliner Corporation in 1997, breached its contract without termination of Ford's agreements.

In its January 29, 2010 Opinion, this Court granted Ford's motion to decertify the damages class.  The Court emphasized the individual qualities of dealer damages, and the parties agreed to proceed via a bellwether trial as to a group of individual dealers.  The Court denied the parties' respective motions to strike expert opinions, reports and testimony, subject to re-filing as motion *in limine*.  Said motions are now properly before the Court.

## II.    LEGAL DISCUSSION

### A.     Defendant's Motion to Preclude the Expert Reports of Dr. Ernest Manual and Plaintiffs' Motion in Preclude Ford's Use of Class of Damages

Ford moves this court to preclude the expert reports of Dr. Ernest Manuel arguing that the expert's method is not generally accepted, made for litigation, and produces dramatically inconsistent results.  Plaintiff retorts that Dr. Manuel's expertise is "beyond reasonable dispute" and that the "Before and After" Methodology, employed by Dr. Manuel is recognized by experts

in the field as an acceptable method of calculating lost profits.  In a related motion, Plaintiffs also

argue that Ford's use of the class-damages model is now irrelevant, and that said evidence should

be excluded because its probative value is outweighed by its prejudicial effects pursuant to Rule

403.  Fed. R. Evid. 403.  Namely, Plaintiff avers that Ford is not offering the class damages

evidence for the truth of the matter asserted, rather, Defendant is using this calculation to

impeach Plaintiffs' expert, Dr. Manuel.  Defendants' concede that the use of class damages is

essentially impeachment evidence, and that "if Dr. Manuel's latest estimates are admitted, Ford

must be allowed to cross-examine him based on his prior opinion purporting to quantify the same

damages."  The Court first addresses the admissibility of Dr. Manuel's expert report.

In Daubert, the Supreme Court held that the trial judge bears the burden of "ensuring that

an expert's testimony rests on a reliable foundation and is relevant to the task at hand."  Daubert

v. Merrel Dow Pharm., Inc., 509 U.S. 579, 597 (1993).  However, "[t]he Rules of evidence

embody a strong preference for admitting any evidence that may assist the trier of fact."  Pineda

v. Ford Moto Co., 520 F.3d 237, 243 (3d Cir. 2008) (internal citations omitted).  In fact, Daubert,

encourages the use of "vigorous cross-examination, presentation of contrary evidence and careful

instruction on the burden of proof" as a means to "attack shaky but admissible evidence."

Daubert, 509 U.S. at 596.

To determine the admissibility of expert testimony, the Third Circuit requires trial courts

to consider three elements: qualifications, reliability, and relevance.  The party seeking to admit a

purported expert's testimony must demonstrate satisfaction of these elements by a preponderance

of the evidence.  Lithuanian Commerce Corp. v. Sara Lee Hosiery, 179 F.R.D. 450, 459 (D.N.J.

1998).  Further, the Supreme Court has stated that "[d]amages are not rendered uncertain because

3

they cannot be calculated with absolute exactness.  It is sufficient if a reasonable basis of

computation is afforded, although the result be only approximate.  Palmer v. Connecticut Ry. &

Lightning Co., 311 U.S. 544, 560 (1941) (quoting Eastman Kodak Co. v. Southern Photo

Materials Co., 273 U.S. 359, 379 (1927).

     As an initial matter, the Court dismisses any argument that Dr. Manuel is not qualified to

testify as an expert.  Upon review of Dr. Manuel's credentials, his expertise in the automotive

industry is beyond dispute.  See Boyer Rpt. ¶¶ 25-33.  As Dr. Manuel's credentials cannot and

have not seriously been questioned,  the Court turns to the reliability of his methods and the

relevance of his testimony.

     Determining the reliability of expert testimony requires an "assessment of whether that

reasoning or methodology underlying the testimony is scientifically valid and of whether the

reasoning or methodology properly can be applied the facts in issue."  Daubert, 509 U.S. at 592-

93.  Further, Rule 702 requires that an expert's testimony be relevant.  "[E]ven if an expert's

proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is

not scientific knowledge for purposes of the case."  In re Paoli R.R. Yard PCB Litig., 35 F.3d

717, 743 (3d Cir. 1994) (emphasis in original).

     Defendant takes the position that, rather than his "Before and After" analysis, Dr. Manuel

should have used a multiple-variable regression analysis to calculate Plaintiffs' lost profits.

Defendants cite case law and economic literature stating that multiple regression analysis is "a

generally accepted economic methodology," "a widely used technique" and "a powerful tool for

analyzing causation."  According to Defendants, "there simply can be no debate that regression

analysis is generally accepted in the field of economics for analyzing lost profits . . ."

4

However, Defendant's preferred method for calculating damages is not the standard by which this Court measures admissibility. While multiple regression analysis may be a widely used — even the most widely used — method by which to calculate lost profits, the fact remains that "the 'before and after method' is recognized by experts in the field as an acceptable method to calculate lost profits." Floorgraphics v, News America Marketing In-Store Serv., Inc., 546 F.Supp.2d 155, 172 (D.N.J. 2008) (citing Pratt, Shannon P., Reilly, Robert F., and Schweihs, Robert P., Valuing a Business, 429 (4th ed. 2000); see also, G.M. Brod. & Co. v. U.S. Home Corp., 759 F.2d 1526, 1538 (11th Cir. 1985) ("There are two generally recognized methods of proving profits: (1) the before and after theory and (2) the yardstick test . . ."). Moreover, "'General Acceptance' is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence . . ." Daubert, 509 U.S. at 597. Instead, "[p]ertinent evidence based on scientifically valid principles will satisfy those demands." Id.

Defendant also argues that Dr. Manuel's reports do not represent what would have happened in the "but-for" world. Namely, that "Dr. Manuel's entire method rests on the supposition that Ford's 'historical decline' would have turned into vigorous sustained growth for the dealers . . ." Further, Defendant argues that Dr. Manuel's damages analysis still ignores profits the dealers actually earned as a result of Ford's sale of the heavy truck business to Freightliner. As such Defendant argues that Dr. Manuel's report should be excluded. However, Daubert, does not call for exclusion but rather an adjustment if there is reliance on a standard methodology that omits a relevant factor. See Daubert, 509 U.S. at 597 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof . . . rather than wholesale exclusion under an uncompromising 'general acceptance' test, are

appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702.").

It is established that the 'Before and After' method is an accepted methodology. Therefore, any

alleged inconsistencies in the execution of or results produced by said methodology are questions

of weight and fact.

 For example, Defendant avers that Dr. Manuel's method has produced dramatically

inconsistent results over the course of this litigation, particularly as between the class damages

calculations and the individual damages calculations. Plaintiff argues that the differences in the

individual estimates, could be said to confirm the decision to decertify the damages class and

proceed with the individual damages trials. It does not call into question the individual damages

estimates, but rather demonstrates that the class estimates were altogether incalculable. Such a

dispute is not a question of admissibility, but rather is a question of fact for the jury to decide.

 Thus, this Court finds that Dr. Manuel is a proper expert pursuant to Rule 702 of the

Federal Rules of Evidence. His testimony rests on an accepted methodology and will assist the

trier of fact. Defendant's arguments are questions of weight, not admissibility. As such, the

Court now turns to whether Defendant's use of Dr. Manuel's class damages calculations are

proper impeachment evidence.

 Rule 613 specifically permits cross-examination based on a witness' prior inconsistent

statements regardless of whether the witness is an expert. As stated, Daubert encourages the use

of appropriate means to attack shaky but admissible evidence. In this case, the potential flaws in

Dr. Manuel's calculations are most exposed in Plaintiff's own argument to include only his most

recent opinions. In their opposition to Defendant's motion to exclude Dr. Manuel's testimony,

Plaintiff argues the differences between the class damages calculations and the individual

damages calculations are due to the inability to calculate the class damages.  As such, Plaintiff has conceded a flaw in Defendant's prior methodology because he purported to calculate a figure that was ultimately "incalculable."  It follows that, because Dr. Manuel formerly produced a faulty calculation, his most recent calculation may also be flawed.

Under these circumstances, case law dictates that Defendant be allowed to cross-examine Dr. Manuel about his prior contrary opinions.   Brandt v. Wand Partners, 242 F.3d 6 (1st Cir. 2001) (allowing defendants to cross examine plaintiff's expert regarding a prior report that supported defendant's arguments); McConnell v. U.S., 393 F.2d 404 (5th Cir. 1968) (finding that the district judge committed reversible error by not allowing cross-examination of the government's expert where there were questions about the expert's prior inconsistent report, credibility, and expertise).  Accordingly, Defendant's motion to exclude Dr. Manuel's testimony is denied and Plaintiff's motion to preclude Ford's use of class damages is likewise denied.

**B.     Plaintiffs' Motions to Bar Expert Testimony of Ned S. Barnes and Exclude Evidence of Super Duty Sales**

Ford offers the opinion of Ned S. Barnes, C.P.A. to rebut some of the opinions of Plaintiff's expert, Dr.Ernest Manuel.  Ford claims that Mr. Barnes provides analyses of financial records that Dr. Manuel failed to perform in both his most recent and prior opinions.  Although Plaintiff does not dispute Mr. Barnes' qualifications as a financial analyst, Plaintiff seeks to exclude his opinion because he is not a production or manufacturing expert.  In a separate motion, Plaintiff also seeks to exclude Mr. Barnes' analysis of the dealers' Super Duty Sales. For the same reasons that this Court has allowed Ford's use of class damages, it also allows the testimony of Ned S. Barnes and evidence of Super Duty Sales.

7

Ford seeks to admit Barnes' report as a rebuttal to Dr. Manuel's opinion, rather than as a stand-alone damages expert. Federal Rule 26 underscores that some expert testimony is "intended solely to contradict or rebut evidence on the same subject matter identified by another expert." Fed. R. Civ. P. 26. The Third Circuit has determined that, there is no distinction between the elements required for admissibility of a "regular" expert and those required for a "rebuttal" expert. Callahan v. A.E.V., 182 F.3d 237, 259 (3d Cir. 1999). As stated, in determining the admissibility of an expert's testimony, the Third Circuit requires trial courts to consider three elements: qualifications, reliability, and relevance.

Mr. Barnes is a certified public accountant and fraud examiner who is qualified to analyze financial records. Plaintiffs have conceded, albeit reluctantly, that Mr. Barnes is qualified to perform certain financial analyses. The Court finds that, much like Dr. Manuel, Mr. Barnes' qualifications cannot seriously be questioned and therefore turns to the relevance and reliability of Mr. Barnes' testimony.

Plaintiff argues that since this Court has already determined that Defendant breached its Heavy Duty Truck Agreement, evidence of Sales of Super Duty Trucks made pursuant to a separate, preexisting contract is therefore irrelevant to the determination of the damages Ford caused when it breached the separate Heavy Duty Truck Agreement. In sum, Plaintiff seeks to exclude Barnes' opinion that the sales of Super Duty Trucks should be subtracted from the contract damages because it is irrelevant.

However, Mr. Barnes seeks to offer opinions that are direct counterpoints to Dr. Manuel's opinions. Notwithstanding all other guidelines for admissibility, an opinion is relevant when it will assist the trier of fact. Mr. Barnes intends to opine at trial that "just as Dr. Manuel concedes

8

he had to subtract each dealer's actual Sterling HN-80 sales in computing 'lost profits' due to the Freightliner sale, so too did Dr. Manuel have to subtract profits these same dealers earned selling the additional Super Duty and Excursion units Ford produced" as a result of the termination of Heavy Duty Truck production.  It is clear that whether there are mitigating factors that a damages expert overlooked is relevant to the trier of fact.

Likewise, Mr. Barnes' opinion is reliable.  In fact, Mr. Barnes' calculation is essentially the same calculation that Dr. Manuel prepared for Dealer Carmenita, but then rejected.  Dr. Manuel justifies ignoring the results of this model based on the dealer principal's testimony that Carmenita increased its emphasis on the used truck business, so its increased used truck profits would have happened anyway.  See  Def. Brief at 38, Ex. 25 p.156.  This discrepancy between Plaintiffs' and Defendant's experts' opinions does not render Defendant's expert's opinion unreliable.  To the extent that Dr. Manuel was justified in ignoring this particular calculation, Plaintiff should present this as impeachment evidence to the trier of fact.  It does not however, render an otherwise relevant and reliable calculation inadmissible.  As such Plaintiffs' motions to exclude the testimony of Ned S. Barnes and evidence of Super Duty Truck sales are denied.

**C.**     **Plaintiffs' Motion to Preclude the Use of Evidence Related to Colony Ford Truck Sales, Inc.**

Plaintiffs seeks to exclude discussion of the following facts.  Ford has a dealer development program that provides financial assistance to establish a store and then allows the operator to buy out Ford's interest over time.  Until the operator buys out Ford's interest, Ford has the right to terminate employees.  F. Robert Lee, now owner of Colony Ford, participated in

9

this program.  Mr. Whitney was a sales manager in 1987 while Mr. Lee was not yet full owner of Colony.  Colony participated in a Competitive Pricing Assistance ("CPA") Program run by Ford. This program provided that Ford would award financial incentives and discounts to dealers if certain criteria of the CPA program were met.   Ford found out that Mr. Whitney had violated the program rules by submitting falsified documents, which resulted in an unfair financial benefit to Colony and Ford terminated Mr. Whitney.  After this incident, Mr. Lee accelerated the purchase of Ford's interest in Colony, bought them out and immediately rehired Mr. Whitney.  Now Mr. Whitney seeks to testify in the instant trial.

Plaintiff argues that any discussion of this incident is so remote in time and irrelevant to the determination of damages that the evidence is inadmissible as irrelevant.  The Court disagrees.  Specific instances of the conduct of a witness may, if probative of untruthfulness, be inquired into on cross-examination.  Fed. R. Evid. 608.  In this case, Mr. Whitney concedes that he lied to Ford by repeatedly submitting fake invoices in a patter of behavior amounting to over $150,000 in fraudulent CPA claims.  Mr. Whitney's submission of falsified documents to Defendant tends to show a character of untruthfulness and demonstrates a bias against Ford. Further, while remoteness in time may reduce the probative value of prior act impeachment, it does not preclude the admission of evidence under Rule 608.  Therefore, Plaintiff's motion to preclude the use of evidence related to Colony Ford Truck Sales, Inc. is denied.

**D.    Plaintiff's Motion to Bar Expert Testimony of David P. Kaplan**

In contrast to Defendant's other impeachment evidence and witnesses, which seek to attack either the execution of Dr. Manuel's methodology or the inconsistency of his results, Mr.

10

Kaplan seeks to testify that Dr. Manuel did not employ generally accepted empirical analyses. Further, Mr. Kaplan would testify that a regression is a superior method for calculating damages. To allow this testimony would run afoul of binding precedent, the Rules of Evidence and this Court's own opinion.

First and foremost, it is established that the "Before and After" analysis is recognized by experts in the field as an acceptable method to calculate lost profits." Floorgraphics v, News America Marketing In-Store Serv., Inc., 546 F.Supp.2d 155, 172 (D.N.J. 2008) (citing Pratt, Shannon P., Reilly, Robert F., and Schweihs, Robert P., Valuing a Business, 429 (4th ed. 2000); see also, G.M. Brod. & Co. v. U.S. Home Corp., 759 F.2d 1526, 1538 (11th Cir. 1985) ("There are two generally recognized methods of proving profits: (1) the before and after theory and (2) the yardstick test . . ."). Moreover, as stated by this Court and others, "'General Acceptance' is not a necessary precondition to the admissibility of scientific evidence under the Federal Rules of Evidence . . ." Daubert, 509 U.S. at 597. Instead, "[p]ertinent evidence based on scientifically valid principles will satisfy those demands." Id.

Pursuant to Rule 403, evidence may be excluded if its probative value is substantially outweighed by the danger of confusing the issues or misleading the jury. To present evidence that Dr. Manuel's methodology is not "generally accepted" would misstate the requirements for admissibility of scientific evidence and ultimately confuse the trier of fact. Indeed Mr. Kaplan's testimony is distinguishable from the other impeachment evidence that Ford intends to present because it does not opine whether Dr. Manuel's calculations are ultimately right or wrong. Rather, he only seeks to attack the use of the before and after methodology, which this Court has

already determined is an acceptable method for calculating lost profits.  Any relevance or value

this testimony may have is substantially outweighed by the danger of prejudice caused by having

Mr. Kaplan mislead the jury as to the empirical value of this method.  Accordingly, Plaintiff's

motion to exclude the testimony of David Kaplan is granted.

## III.   CONCLUSION

For the foregoing reasons Plaintiffs' Motion to Preclude the Use of Class Damages,

Motion to Bar the Expert Testimony of Ned S. Barnes, Motion to Exclude Evidence of Super

Duty Sales, Motion to Preclude the Use of Evidence Related to Colony Ford Truck Sales, Inc.

and Motion to Bar the Expert Testimony of Davis S. Kaplan are granted in part and denied in

part.  Defendant's Motion to Preclude the Expert Reports of Dr. Ernest Manuel is denied.  The

Court will hear oral arguments at the beginning of trial on Defendant's Motions to Preclude the

Expert Opinion Testimony of Les Langenderfer and Motion to Exclude Certain Evidence and

Arguments; and Plaintiffs' Motion to Preclude Defendant's Use of Testimony of Adequacy of

Fact Discovery only.  An appropriate order accompanies this opinion.


DATED: July 1, 2011                                    /s/ Jose L. Linares_____
                                                       JOSE L. LINARES
                                                       U.S. DISTRICT JUDGE